IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FAHEEM ROCHESTER, | : | |
| Plaintiff | : | |
| | : | No. 1:17-cv-01220 |
| v. | : | |
| | : | (Judge Rambo) |
| WARDEN OF SCI BENNER, et al., | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

Pro se Plaintiff, Faheem Rochester ("Plaintiff"), an inmate currently incarcerated at the State Correctional Institution at Graterford, Pennsylvania ("SCI-Graterford"), initiated this civil action by filing a complaint on July 12, 2017, naming as Defendants the Warden of SCI-Benner, Lieutenant Jusits[1], Correctional Officer Lieutenant Luciano, and Doctor Preston. (Doc. No. 1.) Plaintiff alleges that while held in a psychiatric observation cell at SCI-Benner, he was handcuffed to his bed by Defendants Jusits and Luciano because he had a lighter in his rectum. (Id. at 2.) Plaintiff alleges that he was told by both Defendants that in order to have the handcuffs removed, he had to have a bowel movement so they could retrieve the lighter. (Id.) However, Defendant Luciano then came to his cell and informed Plaintiff that Doctor Preston was going to come and physically remove the lighter

---

[1] Defendants notified the Court that in his complaint, Rochester incorrectly named this individual as Lt. Justice, and that the correct individual's name is Lt. Tammy Jusits. (Doc. No. 20).

1

from his rectum. (Id.) Plaintiff provides that he did not consent to Dr. Preston removing the lighter physically, but rather, would give Defendants the lighter once he had a bowel movement. (Id. at 2, 3.) Plaintiff alleges that against his will and despite him telling Defendants to stop, Defendant Luciano as well as nine other unidentified correctional officers held him down on his bed while Dr. Preston physically went into his rectum to retrieve the lighter. (Id. at 3.) Plaintiff alleges that he was bleeding as a result of the incident and was refused medical treatment. (Id.)

Plaintiff has alleged a violation of the Eighth Amendment's prohibition on cruel and unusual punishment as well as an Eighth Amendment deliberate indifference claim against Defendants. The Court performed an initial screening of the complaint pursuant to the Prison Litigation Reform Act ("PLRA"), and on September 5, 2017, dismissed the complaint in part for failure to state a claim upon which relief may be granted. (Doc. Nos. 10, 11.) Specifically, the Court dismissed the Warden of SCI-Benner from this action as well as all claims against Defendants in their official capacities.[2] (Id.) The Court deferred service of the complaint for thirty (30) days, in which it afforded Plaintiff time to file an amended complaint. (Id.) Upon the expiration of those thirty (30) days, and not having received an

---

[2] In reviewing the docket, the Court notes that the Clerk of Court has not yet terminated the Warden of SCI-Benner from this action. Because Plaintiff has not filed an amended complaint curing the deficiencies as to the Warden of SCI-Benner as directed by this Court in its September 5, 2017 (Doc. Nos. 10, 11), the Court will direct the Clerk of Court to terminated the Warden of SCI-Benner from this action.

amended complaint, the Court directed service of the complaint on the remaining Defendants. (Doc. Nos. 14, 26.)

On January 10, 2018, the Commonwealth Defendants Tammy Jusits and C.O. Luciano filed an answer to Plaintiff's complaint. (Doc. No. 41.) Defendant Dr. Preston filed a motion to dismiss on January 26, 2018, asserting that Plaintiff failed to properly exhaust his administrative remedies against Dr. Preston prior to filing the instant action. (Doc. Nos. 43, 44.) Pursuant to Paladino v. Newsome, 885 F.3d 203 (3d Cir. Mar. 16, 2018), and the Court observing that Defendant Preston raised the issue of whether Plaintiff has exhausted his administrative remedies, the Court issued a Paladino Order, informing the parties that it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (Doc. No. 49.) The Court afforded the parties additional time in which to file supplemental materials specifically addressing the exhaustion issue. (Id.)

In accordance with this Court's May 1, 2018 Paladino Order, Dr. Preston filed his supplemental documents and exhibits (Doc. No. 51), along with a statement of facts (Doc. No. 52), on May 18, 2018. Plaintiff filed a supplemental brief in opposition on July 9, 2018 (Doc. No. 56); however, he has not filed a statement of

material facts specifically responding to the numbered paragraphs in Dr. Preston's statement in contravention of this Court's May 1, 2018 Order and Local Rule 56.1.

## II. Standard of Review

Defendant Dr. Preston initially filed a motion to dismiss. (Doc. No. 43) However, Dr. Preston raises the issue of whether Plaintiff has exhausted his administrative remedies. (Id.) Consequently, the Court issued a Paladino Order informing the parties that it would consider the exhaustion issue in the context of summary judgment. (Doc. No. 49.)

### A. Motion to Dismiss

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a

4

mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in <u>Iqbal</u>, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under <u>Twombly</u> and <u>Iqbal</u>, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>,

5

998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of pro se prisoner litigation specifically, the court must be mindful that a document filed pro se is "to be liberally construed."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.  Motion for Summary Judgment

"When a motion to dismiss is converted into a motion for summary judgment the parties must be given notice of the conversion and an opportunity to present material to the court."  Latham v. U.S., 306 F. App'x 716, 718 (3d Cir. 2009); see also Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989).  The United States Court of Appeals for the Third Circuit has held that filing a motion to

dismiss, or in the alternative, a motion for summary judgment is sufficient "to place the parties on notice that summary judgment might be entered." Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996).[3]

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477 U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case. Anderson, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec, Co., 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the

---

[3] Both parties have been given a reasonable opportunity to present material relevant the converted motion. (See Doc. No. 49) (May 1, 2018 Order advising parties that the Court will consider the exhaustion issues in the context of summary judgment, and that Plaintiff must oppose the motion as required by M.D. Pa. L.R. 56.1).

record that it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." U.S. Bank, Nat'l Ass'n v. Greenfield, No. 1:12-cv-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

## III.  Dr. Preston's Statement of Facts[4]

---

[4] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Dr. Preston's Rule 56.1 statement of material facts. (Doc. No. 52.) Plaintiff has failed to file a response to Defendant's statement of material facts in compliance with M.D. Pa. L.R. 56.1, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." Hammonds v. Collins, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing Brooks v. Am. Broad. Co., 999 F.2d 167, 172 (6th Cir. 1993)). The Court accordingly deems the facts set forth by Dr. Preston to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

The Pennsylvania Department of Corrections provides an administrative grievance system requiring inmates to file formal written grievances following an unsuccessful informal resolution of an issue and is set forth in DC-ADM 804. (Doc. No. 52 ¶ 3.) Inmates are provided with notice of the grievance policy and the requirements that must be met in grieving their issues. (Id. ¶ 4.) An inmate must first file a grievance on grievance form DC-804, Part 1, which is readily available in every housing unit of the prison. (Id. ¶ 5.) The inmate must submit each copy of the DC-804, Part 1 form to the Facility Grievance Coordinator, with the exception of the inmate's copy, which the inmate keeps for himself and is goldenrod in color. (Id. ¶ 6.)

The Facility Grievance Coordinator assigns a grievance tracking number to every grievance upon receipt and enters every grievance into the Automated Inmate Grievance Tracking System. (Id. ¶ 7.) If the Facility Grievance Coordinator determines that the grievance is properly submitted, the pink copy of the DC-804, Part 1 form is returned to the inmate acknowledging acceptance of the grievance. (Id. ¶ 8.) If it is determined by the Facility Grievance Coordinator that the grievance is not properly submitted, the grievance is rejected and the entire grievance packet, including exhibits, is returned to the inmate. (Id. ¶ 9.) An initial response is provided to the inmate within 15 working days from the date the

grievance was entered into the Automated Inmate Grievance Tracking System, unless an extension is requested from the Facility Grievance Coordinator. (Id. ¶ 10.)

Once the initial response is complete, the date of the response is entered into the Automated Inmate Grievance Tracking System and the initial response is distributed to the inmate. (Id. ¶ 11.) If an inmate is dissatisfied with the initial review response, an inmate may appeal to the Facility Manager, in writing, within 15 working days form the date of the initial review response. (Id. ¶ 12.) If the appeal is determined to be in accordance with DC-ADM 804, the date the appeal was received is entered into the Automated Inmate Grievance Tracking System. (Id. ¶ 14.) The Facility Manager notifies the inmate of his/her decision within 15 working days of receiving the appeal and the date of the Facility Manager's decision is entered into the Automated Inmate Grievance Tracking System. (Id. ¶ 15.)

If the inmate is dissatisfied with the disposition of the Facility Manager's decision, the inmate may submit an appeal to Final Review with the Chief of the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id. ¶ 16.) Upon completion of review, SOIGA responds directly to the inmate and issues a decision, notifying the inmate and the Facility Manager of the decision and

rationale. (Id. ¶ 17.) Properly completing the grievance process through the final appeal on the merits with SOIGA is a prerequisite to filing any federal suit. (Id. ¶ 18.)

Dr. Preston subpoenaed the entire files held by the offices responsible for grievances relevant to this matter: SCI-Benner and, for the final stage of appeal, SOIGA. (Id. ¶ 19.) Any grievance which has been properly exhausted must have gone through SOIGA. (Id. ¶ 20.) Helen Shambaugh, the Grievance Review Officer for SOIGA, has access to the Department of Corrections' Grievance Tracking System, allowing her access to a computerized screen that displays all grievances that have been appealed by an inmate through final review. (Id. ¶¶ 21, 22.) Upon searching the records, Ms. Shambaugh determined that Plaintiff has not appealed any grievance to the third and final stage of appeal. (Id. ¶ 24.)

The SCI-Benner files reveal that Plaintiff filed two grievances while incarcerated at SCI-Benner: Grievance Numbers 642668 and 643073. (Id. ¶ 27.) While Plaintiff received initial responses to both grievances, he did not appeal either of them. (Id. ¶ 28.) Grievance Number 642668 does not mention Dr. Preston and does not concern the removal of the lighter from Plaintiff's rectum. (Id. ¶ 29.) Grievance Number 643073 was filed on September 8, 2016 and mirrors the allegations of Plaintiff's complaint, alleging that Dr. Preston shot him with two

needles and removed a lighter from his rectum without a court order. (Id. ¶ 31.) Grievance Number 643073 was received by the Facility Grievance Coordinator on September 13, 2016 and was denied on September 29, 2016. (Id. ¶ 32.) Plaintiff did not appeal Grievance Number 643073 beyond the initial review response. (Id. ¶ 34.)

### IV. Discussion

Given that Defendant Dr. Preston's motion to dismiss has been converted to a motion for summary judgment by this Court upon notice to the parties, the Court analyzes the same under the summary judgment standard of review. Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d

Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to

13

excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is

well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'") (citations omitted).

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" Foster v. Morris, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. (quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Dr. Preston contends that Plaintiff has failed to properly exhaust his administrative remedies with respect to any claims he had regarding Dr. Preston's alleged removal of a lighter from Plaintiff's rectum. (Doc. No. 51 at 3.) In support, Dr. Preston submits the affidavit of SOIGA's Grievance Review Officer, Helen Shambaugh (Doc. No. 44-1), who has access to the Department of Corrections' Grievance Tracking System, allowing her access to all grievances that

15

have been appealed by an inmate through the final step of the grievance process, and consequently, properly exhausting the process (Doc. No. 52 ¶¶ 20-22). Ms. Shambaugh affirms that Plaintiff has not appealed any grievance to the final stage of appeal. (Id. ¶ 24.) Notably, Plaintiff has not appealed, through the final stage of appeal, Grievance No. 643073, the only relevant grievance which pertains to Dr. Preston. (Id. ¶¶ 31, 32, 34). Indeed, Plaintiff failed to appeal Grievance No. 643073 beyond the initial review response. (Id. ¶ 34.)

Plaintiff argues that he did exhaust his administrative remedies because he alleges that he filed his grievances but never received a response to the grievance, even though he sent a request as to the status of "why no one responded." (Doc. No. 56 at 2.) However, the record evidence does not support Plaintiff's assertion, and he provides no supporting evidence. Rather, the record reveals that while Plaintiff appropriately filed Grievance No. 643073 on September 8, 2016, utilizing form DC-ADM 804, Part 1, and received the initial denial of this grievance on September 29, 2016 (Doc. Nos. 44-2, at 4; 51, Ex. D at 1-2; 52 ¶¶ 10, 28), he never appealed the denial of this grievance. Additionally, other than his unsupported assertion that he requested the status of his grievance, Plaintiff fails to submit any evidence that he failed to receive a response to this grievance, thereby failing to cross the threshold of the "more than a mere scintilla of evidence" standard needed

to defeat a motion for summary judgment.  See Hall v. Hogan, No. 3:cv-03-2407, 2005 WL 1653248, at *4 (M.D. Pa. July 5, 2005).  Indeed, the record supports Dr. Preston's contention that Plaintiff received the denial of Grievance No. 643073 on September 29, 2016.  (Doc. Nos. 44-2, at 4; 51, Ex. D at 1-2; 52 ¶¶ 10, 28.)  Moreover, Plaintiff has failed to file a response to Dr. Preston's statement of material facts in compliance with M.D. Pa. L.R. 56.1, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  Hammonds, 2016 WL 1621986, at *3 (citing Brooks, 999 F.2d at 172).

Accordingly, the Court finds that Dr. Preston is entitled to summary judgment in his favor and he will be dismissed from this action.

## V. Conclusion

For the foregoing reasons, Defendant Dr. Preston's motion to dismiss (Doc. No. 43), converted to a motion for summary judgment, will be granted, and Dr. Preston will be dismissed from this action.  An appropriate order follows.

    s/Sylvia H. Rambo
    SYLVIA H. RAMBO
    United States District Judge

Dated: July 23, 2018